UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ANTHONY CONTE,

             Plaintiff,

     -against-

TAPPS SUPERMARKET, INC., SEVEN SEAS
PARTNERS, INC., ANTHONY C. CONTE, PAUL
S. CONTE, PASQUALE CONTE, JR., ANTHONY
BILEDDO, and FEDER KASZOVITZ LLP,

             Defendants.

------------------------------------------------------------------X

**DECISION AND ORDER**

22-CV-3109 (DG) (JMW)

**Anthony Conte**
6229 Heliconia Road
Delray Beach, FL 33484
631-949-1660
*Pro se Plaintiff*

Michael P. Robotti
Althea Daley
Marjorie J. Peerce
**Ballard Spahr**
1675 Broadway
19th floor
New York, NY 10019
*For Defendants Tapps Supermarket, Inc.,*
*Seven Seas Partners, Inc., Anthony C. Conte,*
*Paul S. Conte, and Pasquale Conte, Jr.*

Murray L. Skala
David J. Sack
Jonathan Honig
**Feder Kaszovitz LLP**
845 Third Avenue
11th FL
New York
New York, NY 10022
*For Defendants Tapps Supermarket, Inc.,*
*Seven Seas Partners, Inc., Anthony C. Conte,*
*Paul S. Conte, and Pasquale Conte, Jr., the*
*Estate of Pasquale Conte, Sr., and Feder Kaszovitz LLP*

Michael S. Cole
**Cole Chester LLP**
777 Third Avenue
25th Floor
New York, NY 10017
*For Defendant Anthony Bileddo*


**WICKS,** Magistrate Judge:

Plaintiff Anthony Conte, appearing *pro se,* commenced this action against Defendants Tapps Supermarket, Inc., Seven Seas Partners, Inc., Anthony C. Conte, Paul S. Conte, and Pasquale Conte, Jr., the Estate of Pasquale Conte, Sr., Anthony Bileddo, and Feder Kaszovitz LLP, for purportedly stealing/depriving Plaintiff of stock, property rights, and ownership in corporate entities bequeathed to him by his deceased parents.  (DE 19.)  Plaintiff asserts a total of twelve causes of action against Defendants as follows: (1) Violations of the Racketeer Influenced Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. § 1962 (c); (2) fraud; (3) conversion; (4) "shareholder distributions"; (5) "minority shareholder oppression"; (6) common-law dissolution; (7) dissolution pursuant to N.Y. Bus. Corp. L. § 1104-a; (8) appointment of receiver pursuant to N.Y. Bus. Corp. L § 1113; (9) unjust enrichment; (10) breach of fiduciary duty; (11) aiding and abetting fraud by Defendant Feder Kaszovitz LLP; and, (12) negligent misrepresentation by Defendant Feder Kaszovitz LLP.  (DE 19.)

Before the Court is the joint motion[1] of Defendants Tapps Supermarket, Inc., Seven Seas Partners, Inc., Anthony C. Conte, Paul S. Conte, and Pasquale Conte, Jr., the Estate of Pasquale Conte, Sr., and Feder Kaszovitz LLP, (DE 48; DE 51), and Defendant Anthony Bileddo's separate motion (DE 47), for a stay of discovery pending a decision on their motion to dismiss

---

[1] The Court refers to Defendants, except for Defendant Bileddo, collectively as the "Defendants," as they have jointly submitted their motion to stay.  Defendant Bileddo is referred to separately as "Bileddo."

2

the Amended Complaint.  That motion is expected to to be fully briefed and filed on or before

December 5, 2022.  (DE 32.)  Plaintiff, Anthony Conte, strenuously opposes the motions.  (DE

53; DE 55; DE 63.)[2]

Having considered the parties' submissions[3] and guided by the applicable law, for the

following reasons, Defendants' motions to stay discovery are granted.

## I.      BACKGROUND

### A. Plaintiff's Claims

The following allegations are drawn from Plaintiff's Amended Complaint and are

presumed true for the purposes of the present motion.

On December 24, 1972, when Plaintiff turned twenty-one, he inherited one-sixth of his

deceased father, Antonio Conte's, estate.  (DE 19 ¶ 24.)  The inheritance included all shares of

stock in individual corporations that owned and operated supermarkets, and the real property

where some of the supermarkets were located, as well as a home located at 196-17 53rd Avenue,

Flushing, New York 11365.  (*Id.*)  The corporations consisted of Conte Super-Markets, Inc.,

Conte Estate, Inc., Conte Flushing, Inc. (later known as Conte Family Circle, Inc.), Ancon Realty

Corp., and 3917-103rd Street Realty Corp.  (*Id.*¶ 25.)

Plaintiff began working at the supermarket businesses at the age of twelve.  (*Id.* ¶ 26.)

During college he continued to work through summer breaks and after graduating college, from

1973-1984, he worked full time and became a supervisor.  (*Id.*)  During 1976-1980, Plaintiff also

---

[2] Plaintiff filed three letters responding to Defendants' motions.  DE 53 and DE 54 appear to be duplicates.  DE 55 encloses a copy of DE 53/54, and asserts additional arguments in opposition.

[3] Defendants made an application seeking leave to file a reply (DE 64), which the Court denied (Electronic Order dated Sept. 24, 2022).  Accordingly, a reply on the motions was not filed.

attended law school.[4]  (*Id.*)  Eventually, Plaintiff began to feel he was being pushed out of the business. He wanted to distance himself from "daily ongoing organized crime and racketeering activities, such as drug distribution, money laundering and tax evasion activities being conducted at those premises" by Defendants Anthony C. Conte, Paul S. Conte, Pasquale Conte, Jr., and Anthony Bileddo, who co-managed the business.  (*Id.* ¶ 29.)  According to Plaintiff, Defendants were purportedly involved in criminal mob activity, made physical threats toward Plaintiff, had discussions regarding murders committed by various named Defendants, were involved in drug distribution and money laundering activities, and the subject of FBI investigations.  (*Id. passim.*)  He further claims that since the 1960's, Defendants Anthony C. Conte, Paul S. Conte, Pasquale Conte, Jr. and Anthony Bileddo, each removed cash from Plaintiff's supermarket businesses and the other supermarkets that they operated, to evade paying taxes.  (*Id.* ¶32.)  Plaintiff claims he was also denied Social Security benefits and could not collect on his pension plan as a result of Defendants "maliciously rebuff[ing]" the benefit plans.  (*Id.* ¶33.)

In 1984, Plaintiff requested to be bought out of two of the supermarket businesses – Conte Super-Market Inc. and Conte Estate Inc. (*id.* ¶ 26), which took place on May 11, 1984, when he was bought out of his ownership interest.  (*Id.* ¶ 27.)  Prior to the sale, the two corporations merged into Conte Super-Market, Inc.  (*Id.*)  Plaintiff's sale of his interest in the two merged corporations represented the value of equipment used to operate the business, a

---

[4] While Plaintiff states in his Amended Complaint that he attended law school (DE 19 ¶ 26), he does not state whether he is admitted to practice before any court.  That said, the Court remains mindful that in considering Defendants' arguments on the motions to dismiss, Plaintiff is *pro se.*  Accordingly, the Court nevertheless construes the allegations of his Complaint liberally, viewing the pleading as raising the strongest possible arguments.  *See McIntyre v. Longwood Cent. Sch. Dist.*, No. 07-CV-1337 (JFB)(ETB), 2008 WL 850263, at *3 (E.D.N.Y. Mar. 27, 2008); *see also Dorfman v. Bruno*, No. 09-CV-4355 (JS)(WDW), 2011 WL 197885, at *2 (E.D.N.Y. Jan. 18, 2011) (finding that when a *pro se* plaintiff is an attorney admitted to practice before the court, that court need not give his pleading the same liberal interpretation given to a non-attorney's pleading).

multiple of average weekly sales and goodwill value.  (*Id.*)  The sale did not include the shares of stock and real estate owned by Ancon Realty Corp., 3917-103rd Street Realty Corp., or Conte Family Circle, Inc., which held title to the property that the supermarkets operated from and the home in which Plaintiff maintained an ownership interest in by way of his father's will.  (*Id.*)  Plaintiff alleges that he signed the Memorandum of Redemption of Stock on May 11, 1984, under duress, doing so even though the agreement undervalued the shares of stock.  (*Id.* ¶ 46 (citing Ex. B to Amended Complaint).).

Plaintiff still had a stock interest in at least three corporations that owned real property and after 1984, he made numerous failed attempts to the Defendants, Bileddo and their attorneys, Defendant Feder Kaszovitz LLP, as to the status of those corporations.  (*Id.* ¶ 47.)  Defendants maintained possession and control of the corporate books, stock certificates and records, but Plaintiff was continuously ignored or threatened by Defendants who told Plaintiff he no longer owned any interests in any of the corporations.  (*Id.*)  Plaintiff also made numerous failed attempts to obtain information regarding the shares of stock of his sister who died intestate in 1990.  (*Id.* ¶ 48.)  Plaintiff asserts that Defendants, Bileddo, and Feder Kaszovitz LLP "somehow" fraudulently merged the property-owning corporations that he and his mother had owned substantial shares in by merging them into other corporate entities that later became known as Tapps Supermarkets, Inc. and Seven Seas Partners, Inc.  (*Id.* ¶ 49.)  Plaintiff asserts this transaction (or transactions) was fraudulent and done without his knowledge or permission, and without ever redeeming or paying him for his existing shares of stock, or his mother's shares which he stood to inherit.  (*Id.* ¶ 50.)  Plaintiff claims that because he was denied access to the books and records of those "property owning corporations," he only became aware in April of

2022 that the property he had an ownership interest in had been sold to a developer for $42.5 million, of which Plaintiff was not paid any of his legitimate share of proceeds.  (*Id.* ¶ 52.)

### B.  Procedural Background

Plaintiff commenced this lawsuit on May 27, 2022.[5]  (DE 1.)  On June 8, 2022, Defendant Bileddo filed a letter motion seeking a pre-motion conference in anticipation of filling a motion to dismiss.  (DE 6.)  On June 15, 2022, Defendants filed a letter motion also seeking a pre-motion conference regarding their anticipated motion to dismiss.  (DE 10; DE 12.)  On June 22, 2022, Plaintiff filed an opposition letter, requesting that the Court "suspend" granting Defendants' request until "sufficient discovery and the production of the corporate books and records that are in dispute in this case can occur," to allow Plaintiff and the Court to determine the status of the corporate entities, real property, and other assets at issue.  (DE 18.)  On June 23, 2022, the Honorable Diane Gujarati referred the letter motions to the undersigned.  (Electronic Order dated June 23, 2022.)  Plaintiff filed an Amended Complaint on June 24, 2022.  (DE 19.)  On June 27, 2022, the undersigned granted the pre-motion conference requests.  (Electronic Order dated June 27, 2022; DE 6; DE 10.)  Defendants filed another letter motion updating the Court as to their position on their anticipated motion to dismiss in regard to the Amended Complaint.  (DE 22.)  Plaintiff filed another letter in response on July 13, 2022.  (DE 30.)

The parties appeared before the undersigned for a pre-motion conference on July 14, 2022.  (DE 32.)  A briefing schedule was set for the Defendants' respective motions to dismiss, and the Defendants' joint request for leave to move for a stay of discovery was granted.  (*Id.*)

---

[5] Plaintiff asserts that he fears that Defendants may kill him in retribution for bringing this lawsuit and that he has videotaped his "complete testimony as to all these matters and given copies of it to third parties to be provided to law enforcement authorities in the event of [his] untimely death."  (DE 19 ¶ 56.)

The next day, Plaintiff emailed Defense Counsel, Mr. Skala, threatening to file a grievance and a formal complaint with the U.S. Attorney's Office requesting a criminal investigation if he did not turn over corporate records and shareholder documents.  (DE 34-1.)  In response, on July 15, 2022, Defendants requested an order that discovery related to this matter be stayed pending the decision on the instant motion which had not yet been briefed and submitted.  (DE 34.) Defendants' request was granted on July 16, 2022.  (Electronic Order dated July 16, 2022.) Plaintiff proceeded to file a motion to compel on July 18, 2022, again requesting the corporate books and records and to allow the parties time to engage in settlement discussions.  (DE 38.) Not all parties consented to engage in settlement discussions and the undersigned again denied Plaintiff's request for the corporate documents.  (Electronic Order dated July 19, 2022.)  Plaintiff filed *another* letter on July 19, 2022, again requesting the documents, arguing that the Court has prejudiced him by denying is prior requests.  (DE 41.)  On July 21, 2022, the Court entered an Order noting that Plaintiff's position regarding prejudice is more appropriately the subject of any opposition he has to Defendants' motion to stay.  (Electronic Order dated July 21, 2022.)  On August 1, 2022, Plaintiff filed a letter threatening that he would move for recusal of the undersigned if the undersigned continued to let Defendants "hide" their corporate books and records and "deliberately waste [Plaintiff's] time and money."  (DE 46.)  Defendant Bileddo and all other Defendants filed their motions for a stay on August 5, 2022.  (DE 47; DE 48.[6])  Plaintiff filed opposition on August 16, 2022.  (DE 53.)  Thereafter, Plaintiff filed another letter in opposition regarding the exhibits to Defendants' motion and requesting an extension of time to

---

[6] A corrected Exhibit A to Defendants' motion (DE 48) was filed on August 11, 2022.  (DE 51.)

respond to the motions to stay.[7]  (DE 54; DE 55.)  On September 1, 2022, the undersigned granted Plaintiff's extension request.  (Electronic Order dated Sept. 1, 2022).  Plaintiff submitted further opposition dated September 15, 2022.  (DE 63.)  The fully briefed stay motion is now before the Court.

## II.    LEGAL STANDARD

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  *Thomas v. N.Y. City Dep't of Educ.*, No. 09-CV-5167 (SLT), 2010 WL 3709923, at *2 (E.D.N.Y. Sept. 14, 2010) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  The filing of a dispositive motion in and of itself does not halt discovery obligations. *Weitzner v. Sciton, Inc.*, No. CV 2005-2533 (SLT)(MDG), 2006 WL 3827422, at *1 (E.D.N.Y. Dec. 27, 2006) (citation omitted).  That is, a stay of discovery is not warranted, without more, by the mere pendency of a dispositive motion.  *Id.*  Rather, the moving party must make a showing of "good cause" to warrant a stay of discovery.  *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 115 (E.D.N.Y. 2006).  In evaluating whether a stay of discovery pending resolution of a motion to dismiss is appropriate, courts typically consider: "(1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *Id.* (citation omitted).  "Courts also may take into consideration the nature and complexity of the action, whether some or all of the defendants

---

[7] Plaintiff filed another letter on August 31, 2022, requesting that the undersigned cease to preside over any further proceedings.  (DE 57.)  Defendants opposed Plaintiff's application (DE 59; DE 61) and the application is currently *sub judice* before the Honorable Diane Gujarati.

have joined in the request for a stay, and the posture or stage of the litigation." *Id.* (citation omitted).

### III.   <u>DISCUSSION</u>

#### A.  **Have Defendants Made a Strong Showing That the Claims Are Unmeritorious?**[8]

***Whether the Claims were Released by the Stock Purchase Agreement and Release***

Defendants attach stock purchase agreements and a general release[9] dated May 11, 1984 to their motion to stay, which the Court surmises they will attempt to use in their motion to dismiss when fully briefed.  (DE 48-1.)  Defendants argue that according to those documents, Plaintiff sold his interests in Ancon and 3917-103[rd] Street Realty Corp. in the same transaction that Plaintiff references in the Amended Complaint.  (DE 48; DE 51.)  Defendants assert that the documents may be considered because they are integral to the Amended Complaint.  In opposition, Plaintiff argues vehemently that he has never seen, signed, or been told of these documents.  (DE 53.)  Plaintiff goes so far as to say he would submit to a lie detector test to demonstrate that the documents are fake and that he intends to have the original documents examined by a document expert.  (*Id.*)

While it is true that a District Court may consider documents incorporated by reference in the complaint when deciding a Rule 12(b)(6) motion to dismiss, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."  *DiFolco v.*

---

[8] The Court's consideration and analysis of Defendants' arguments as to the merits of Plaintiff's claims is purely for purposes of weighing whether a stay should be granted. The Court is in no way prejudging the anticipated motions to dismiss, the merits of which will be considered independent of the current motions to stay.

[9] Defendants subsequently filed a corrected version of the Exhibit to include the referenced general release.  (DE 52.)

*MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citation omitted).  "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document."  *Id.* (citation omitted).  Guided by this principle, the Court does not consider those documents proffered by Defendants in analyzing whether Plaintiff's claims appear unmeritorious for purposes of the subject motions to stay.

### *Judicial Estoppel*

Defendants next argue that Plaintiff's failure to list the interests in the subject companies when he filed for bankruptcy judicially estops him from now claiming he has such interests.  (DE 48 at 4.)  Defendants point to the petitions Plaintiff submitted for bankruptcy in 2003 and 2004 (DE 48 at Ex. B – Ex. C) which each contain a schedule of assets without any mention of the subject interests.  (*Id.*)  In Plaintiff's letter opposing Defendants' pre-motion conference requests, (DE 24), he argues that he relied to his detriment on false and fraudulent statements made by Defendants.  He further argues that without access to the books and records, he could not have known the magnitude of the fraud and could not have complained of the conversion that took place until he became aware of the actual sale of the property in April of 2022.  (*Id.*)  In opposition to the motion to stay, Plaintiff reiterates that when he filed for bankruptcy, he had no idea what property he had an ownership interest in.  (DE 63.)  Yet, Plaintiff asserts that when the sale of real property took place in March of 2022, he somehow then became aware that he had ownership interest in the property.  (*Id.*)

Judicial estoppel generally applies if "(1) a party's later position is clearly inconsistent with its earlier position; (2) the party's former position has been adopted in some way by the court in the earlier proceeding; and (3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel."  *In re Adelphia Recovery Trust*, 634 F.3d

678, 695-96 (2d Cir. 2011) (internal quotation marks and citation omitted).  A debtor seeking

bankruptcy protection is required to disclose all assets.  *Thomas v. JP Morgan Chase, N.A.*, No.

11-CV-3656 (JG)(RML), 2012 WL 2872164, at \*7 (E.D.N.Y. July 11, 2012).  Courts commonly

"invoke judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy

proceedings from asserting that claim in a subsequent action."  *Id.* (citations omitted).

Here, Plaintiff alleges that since his parents' deaths, which occurred years before the

bankruptcy proceedings, he had interests as a shareholder in the subject property/companies.

However, those interests are not listed in either bankruptcy petition.  Before and after Plaintiff's

bankruptcy case, he claimed ownership interest in the subject properties, as asserted in the

Amended Complaint and argued in his briefs.  The inconsistency is irreconcilable on this record.

Accordingly, the Court finds that Defendants' arguments as to judicial estoppel cast a strong

doubt on the merits of Plaintiff's claims, all of which are based upon his purported ownership

interests.

### *The Applicable Statutes of Limitation and Tolling*

All Defendants assert that the statute of limitations precludes each of Plaintiff's claims,

which accrued over 35 years ago no later than 1985 when Plaintiff asserts that he began asking

Defendants about his and his mother's purported stock interests.  (DE 47; DE 48.)   Plaintiff

argues that equitable tolling should apply, specifically for his conversion claims, "as long as the

Defendants continue to withhold the books and records of these property owning corporations."

(DE 24.)

The following are the applicable statutes of limitations in this matter:

- RICO claims are governed by a four-year statute of limitations.  *Allstate Ins. Co. v.
  Elzanaty*, 916 F. Supp. 2d 273, 299 (E.D.N.Y. 2013) (citing *Agency Holding Corp. v.
  Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 156 (1987)).  "The statute of limitations begins

to run when the plaintiff discovers, or should have discovered, the alleged RICO injury – not the underlying pattern of racketeering activity." *Id.* (citation omitted).

- Unjust enrichment claims are governed by a six-year statute of limitations if equitable relief is sought and a three-year statute of limitations if monetary relief is sought. *839 Cliffside Ave. LLC v. Deutsche Bank Nat'l Trust Co.*, 15-CV-4516 (SIL), 2016 WL 5372804, at *7 (E.D.N.Y. Sep. 26, 2016) (citations omitted). The statute "begins to run when a defendant accepts the benefits bestowed upon him." *Id.* (internal quotation marks and citation omitted).

- Similarly, breach of fiduciary duty claims are governed by the same three-year or six-year statute of limitations, depending on whether the relief sought is equitable or monetary. *Horan v. Vieira*, 18-cv-01286 (JMA) (ST), 2021 WL 1200220, at *5-6 (E.D.N.Y. Mar. 12, 2021), *report and recommendation adopted by* 2021 WL 1193146 (E.D.N.Y. Mar. 30, 2021). Where a fraud allegation is essential to the breach of fiduciary duty claim, the six-year statute is applied. *Id.* (citations omitted). A breach of fiduciary duty claim accrues at the time of the breach. *Id.* (citations omitted).

- Negligent misrepresentation is subject to a three-year limitations period, "unless the claim is grounded upon essential allegations of actual or constructive fraud, in which case the claim is governed by a six-year limitations period." *BankUnited, N.A. v. Merritt Env't Consulting Corp.*, 360 F. Supp. 3d 172, 187 (S.D.N.Y. 2018) (internal quotation marks and citation omitted).

- Fraud claims and aiding and abetting fraud claims are both subject to a six-year statute of limitations. *HSA Residential Mortg. Servs. of Texas v. Casuccio*, 350 F. Supp. 2d 352, 366 (E.D.N.Y. 2003) (citing N.Y. C.P.L.R. § 213(8)).

- Conversion claims are governed by a three-year statute of limitations, which accrues when the conversion takes place. *Hui Qun Zhao v. Yu Qi Wang*, No. 10-CV-1758 (JMA), 2013 WL 269034, at *7 (E.D.N.Y. Jan. 24, 2013) (citing N.Y. C.P.L.R. § 214(3)).

- Plaintiff's claims regarding minority shareholder oppression, common law dissolution, appointment of a receiver, and dissolution pursuant to BCL § 1104-a are based on allegations that Plaintiff's interests as a shareholder were wrongfully terminated. Where there is no limitation period specifically prescribed, a six-year statute applies. *See, e.g., Stern v. BSL Dev. Corp.*, 163 A.D.2d 35, 557 N.Y.S.2d 89 (1st Dep't 1990).

Equitable tolling is only applied in "rare and exceptional circumstances," in which a party was prevented "from timely performing a required act," and that "party acted with reasonable diligence throughout the period" sought to be tolled. *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (citation omitted). "The doctrine of equitable estoppel applies where it would be

unjust to allow a defendant to assert a statute of limitations defense . . . [such as when] a plaintiff is induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014) (internal quotation marks and citations omitted).  In such an instance, the fraud, misrepresentations, or deception must be directed at preventing the plaintiff from filing a lawsuit and the plaintiff must show "reasonable reliance on defendant's misrepresentations, and due diligence in bringing a claim when the conduct relied upon as the basis for equitable estoppel ceases to be operational."  *Id.* at 442-43 (citation omitted).

Here, the Court finds it unlikely that Plaintiff will be able to salvage his causes of action, all of which appear on their face time barred.  It is "fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit." *Twersky*, 993 F. Supp. 2d at 444 (quoting *Zumpano v. Quinn*, 6 N.Y.3d 666, 674, 849 N.E.2d 926, 929, 816 N.Y.S.2d 703, 706 (2006)).  In *Zumpano*, the Court held equitable estoppel was inapplicable because the defendants had not prevented the plaintiffs from learning of their claims.  *Zumpano*, 6 N.Y.3d at 674, 849 N.E.2d at 929, 816 N.Y.S.2d at 706.  Although Plaintiff asserts claims for fraud and misrepresentation, these allegations themselves did not prevent Plaintiff from bringing suit.  Plaintiff states in his Amended Complaint that his basis for the tolling request is that "he was only able for the first time in March of this year (2022) to learn what the Defendants had done with some of the property in question."  (DE 19 at ¶ 73.)  And so, not until the subject property was sold did Plaintiff decide to bring the instant lawsuit, which casts significant doubt as to due diligence in bringing the claims.[10]  *See Overall v. Est. of Klotz*, 52 F.3d 398, 404 (2d Cir. 1995) (finding that

---

[10] As Defendants also note (DE 48 at 6 n.7), to the extent Plaintiff makes any argument to toll the statute of limitations based on duress (which he has not expressly asserted), duress tolling is not applicable

"a person who seeks equity must do equity" and "[e]quitable estoppel, therefore, looks at the parties' conduct only to determine their relative blameworthiness in delaying the commencement of suit.") (citation omitted).  Thus, Defendants' arguments for dismissal based on the statute of limitations appear to be a viable defense to Plaintiff's claims.

### Whether Plaintiff Sufficiently Pled His RICO Claim[11]

Defendants collectively argue that even if Plaintiff's RICO claims were timely, Plaintiff has not adequately pled a RICO claim.  (DE 47 at 2; DE 48 at 7.)  There are three elements to a civil RICO claim: "(1) a violation of 18 U.S.C. § 1962; (2) injury to plaintiff's business or property; and (3) causation of the injury by the violation." *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 222 (E.D.N.Y. 2014).  To state a violation under section 1962, a plaintiff has to plead "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity." *Id.* (citations omitted).  Further, the plaintiff "must allege that a defendant, 'employed by or associated with' an enterprise affecting interstate or foreign commerce, conducted or participated in the conduct of this enterprise's affairs 'through a pattern of racketeering activity.'" *Id.* (citing S.*Q.K.F.C., Inc., v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996)).

The "continuity" requirement requires a plaintiff to plead at least two predicate acts, and show that those acts are related and amount to, or pose a threat of, continuing criminal activity. *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 465 (2d Cir. 1995) (citing § 1961(5)).

---

unless "the underlying tort has duress as an element of the offense, and the tortious conduct persist[s] as a continuous wrong." *Melendez v. Greiner*, 477 F. App'x 801, 803 (2d Cir. 2012) (summary order) (alteration in original) (internal quotation marks and citation omitted).

[11] Plaintiff alleges a RICO claim in his first cause of action. However, within that cause of action, he alleges three "counts".  For purposes of this motion, the Court refers to the claims as a "RICO claim," rather than "claims" plural.

"A pattern of racketeering may be closed-ended or open-ended." *Rosner v. Rosner*, 766 F. Supp. 2d, 425 (2d. Cir. 2011). While a close-ended pattern has a discrete beginning and end, and open-ended pattern does not necessarily have a broad set of predicate acts, but consists of a pattern likely to continue into the future. *Id.* There is also a relatedness requirement whereby predicate crimes must be related to each other and to the enterprise as a whole. *Reich v. Lopez*, 858 F.3d 55, 60-61 (2d Cir. 2017) (citations omitted).

Defendants argue that Plaintiff has merely pled a single scheme with one victim and a limited number of participants, which on its face does not state a RICO claim. (DE 48 at 7.) Defendants also assert that Plaintiff's allegations do not meet the continuity requirement and that Plaintiff's Complaint fails to set forth a plausible statement of a pattern. (*Id.*)

Here, Plaintiff's Amended Complaint assert a RICO claim against the "Tapps Defendants" who he defines as Tapps Supermarket, Inc., Anthony C. Conte, Paul S. Conte, Pasquale Conte, Jr., Estate of Pasquale Conte, Sr., and Anthony Bileddo. (DE 19 ¶¶ 11, 13-17, 60-103.) Plaintiff alleges that the Tapps Defendants created an "enterprise," which he describes as the Tapps Enterprise, "for the common purpose of intentionally and willfully defrauding the Plaintiff . . . and others including the Plaintiff's mother Francesca Paola Conte by creating and concocting a fraudulent scheme to loot and convert to their own use, without payment . . ." their stock shares in various property-owning corporations. (*Id.* ¶ 71-72.) Plaintiff further alleges that the Tapps Defendants, as recently as March of 2022,[12] falsely and fraudulently represented in mortgage applications, permits and property sale documents that they transmitted to third parties in interstate commerce and by wire, that they possessed clear title to the property located at 757-

---

[12] Despite Plaintiff alleging RICO claims as recent as 2017-2022, this does not alter the Court's above analysis as to the statute of limitations as Plaintiff was not a party to the sale of the property or victim of allegedly fraudulent tax filings.

581 Grand Street, Brooklyn, which they sold for $42.5 million when they did not in fact have clear title and ownership of that property.  (*Id.* ¶ 61.)  Further, Plaintiff alleges that from 2017-2022 Anthony C. Conte, Paul S. Conte, Pasquale Conte, Jr. and Anthony Bileddo, submitted fraudulent IRS tax returns.  (*Id.* ¶ 62.)

Here, there appear to be multiple issues with Plaintiff's RICO claim, which calls into question whether the claims are meritorious.  First, although Defendants do not directly address potential standing issues with Plaintiff's RICO claim, the Court notes that standing may be a barrier.  Indeed, the statute itself "limits standing to plaintiffs whose injuries were both factually and proximately caused by the alleged RICO violation."  *In re Am. Exp. Co. Shareholder Litig.*, 39 F.3d 395, 399 (2d Cir. 1994) (citations omitted).  If the allegations in Plaintiff's Amended Complaint are true – that Defendants sold the property without clear title and defrauded the IRS – Plaintiff is not the injured party in regard to those acts.  His injuries, if the allegations are true, boil down to loss of a portion of the profits of the sale of the property.  Such injuries are not "the target of the racketeering enterprise nor the competitors nor the customers of the racketeer."  *Id.* (citations omitted).  Thus, there appears to be a strong argument that the targets of Defendants, according to the Amended Complaint were the IRS and the purchaser of the subject property.  Additionally, the alleged crimes against the IRS and the alleged crime regarding the sale of property without clear title do not appear to satisfy the relatedness requirement.  *See Lopez*, 858 F.3d 55, 62 (finding that dissimilar "methods of commission, victims, and result of the predicate acts . . . weigh against relatedness.").

In any event, even if Plaintiff has standing to assert the RICO claim regarding the subject property, there are other serious questions as to whether that claim is sufficiently pled.  The false mortgagee applications and property sale documents allegedly achieved through mail and wire

fraud, which purportedly led to the sale of the subject property, appear to be a single scheme, not a pattern and do not appear to establish the requisite continuity. *See Rosner*, 766 F. Supp. 2d 422, 425-26 (finding that regardless of the alleged predicate acts, the plaintiff alleged a single goal of all of the activity, which does not rise to the level of wrongdoing required to state a RICO claim); *United States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir. 1995) ("[I]n cases concerning . . . endeavors that are not inherently unlawful, such as frauds in the sale of property[, as opposed to murder or obstruction of justice,] the courts generally have found no threat of continuing criminal activity . . . ."). Accordingly, apart from the statute of limitations hurdle identified above, there are sufficiently serious questions as to the merits of Plaintiff's RICO claim.

### *Whether Plaintiff Alleged Fraud with the Requisite Particularity*

Defendants argue that Plaintiff's fraud claims should be dismissed for failure to plead with particularity as required by Federal Rule of Civil Procedure 9(b). Fed. R. Civ. P. 9(b) states in part that "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "Rule 9(b) must be read together, however, with Rule 8(a), which calls for 'short and plain statement[s]' of claims for relief." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1298, at 406 (1969)). Allegations of fraud should "specify the time, place, speaker, and content of the alleged misrepresentations" and where multiple defendants are named, the pleading should set forth the nature of each defendant's alleged participation in the fraud. *Id.* (citations omitted). Fraudulent concealment claims require a plaintiff to show that the defendant(s) had a duty to disclose the concealed fact. *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007).

Here, while Plaintiff's Amended Complaint details specific places, times, and conversations he had with multiple Defendants regarding their alleged criminal dealings with murders and mob activities, there is a lack of detail regarding his actual claims of fraud.  Plaintiff generally states that he repeatedly asked Defendants about his ownership interest in the subject property, but was repeatedly turned down, without specificity as to any of those conversations – aside from alleging Defendants told him the property was "worthless," that he no longer owned any interests and to "stay away."  (DE 19 ¶¶ 47, 106.)  "While pleadings prepared by *pro se* litigants such as plaintiff are generally held to less stringent standards than formal pleadings drafted by lawyers, . . . they are still subject to dismissal where the pleadings fail to comply with Rule 9(b)."  *Keane v. Keane*, No. 08 Civ. 10375(WCC), 2009 WL 1490686, at *5 (S.D.N.Y. May 27, 2009 (internal quotation marks and citations omitted); *see also Lichtenstein v. Reassure Am. Life Ins. Co.*, Nos. 07-cv-1653 (DLI)(LB), 07-cv-1680 (DLI)(LB), 2009 WL 792080, at *7-8 (E.D.N.Y. Mar. 23, 2009) (dismissing *pro se* plaintiff's fraud claims for failure to meet the heightened pleading standards of Rule 9(b) as plaintiff did not provide "any specific facts to support any aspect of [the] sweeping fraud allegations."); *Ajamian v. Nimeh*, 16-CV-00145 (JMA)(AYS), 2016 WL 3948067, at *3 (E.D.N.Y. July 19, 2016) ("While the special leniency afforded to *pro se* . . . litigants somewhat loosens the procedural rules governing the form of pleadings, it does not completely relive a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Federal Rules of Civil Procedure 8 and 9."); *Rivera v. Golden Nat. Mortg. Banking Corp.*, No. 04 Civ. 4545(RMB), 2005 WL 1514043, at *3 (S.D.N.Y. June 27, 2015) (finding that even *pro se* plaintiffs must adhere to the pleading requirements of Rule 9(b) for fraud claims by alleging with particularity the relevant details of each act, including which statements were fraudulent, when and where the statements were made, and who made the

statements).   Thus**,** even considering Plaintiff's *pro se* status, the Court finds Defendants'

arguments that the fraud claims are not adequately pled to be persuasive.  *Cf. Protter v. Nathan's*

*Famous Sys., Inc.*, 904 F. Supp. 101, 108 (E.D.N.Y. 1995) (finding that fraud was sufficiently

pled where complaint stated that specific defendant made certain representations about

profitability in an effort to portray franchise as successful when in reality most stores were

operating at a loss, and stated specific defendant told the plaintiffs money would be used for

franchisor's infrastructure when it was not used of that purpose).[13]

### *Plaintiff's Claims for Conversion, Shareholder Distributions, Minority Shareholder Oppression, Common-Law Dissolution, Statutory Dissolution, and Appointment of a Receiver Pursuant to Business Corporation law*

Defendants argue that Plaintiff's claim for conversation, even if timely, fails because

Plaintiff does not identify the property that was converted, and that intangible property such as

stock interests cannot be the subject of a conversion claim.  (DE 48, n.9.)  "The subject matter of

a conversion cause of action must constitute identifiable tangible personal property; real property

and interests in business opportunities will not suffice[.]"  *C & B Enters. USA, LLC v. Koegel*,

136 A.D.3d 957, 958, 26 N.Y.S.3d 185, 187 (2d Dep't 2016) (internal quotation marks and

citations omitted).  Here, the Court finds that Defendants' argument seeking to dismiss Plaintiff's

conversion claim appears likely to be successful as the claim is not based on tangible personal

property.

Further, Defendants argue that Plaintiff cannot plead inconsistent assertions of facts,

which they assert he has done here, by alleging conversion of ownership interests on the one

hand, and multiple causes of action based on continued stock ownership, on the other hand.  (DE

---

[13] The Court notes that if Plaintiff's fraud claims are ultimately dismissed after the anticipated motions to dismiss are fully briefed, leave to amend is typically granted where dismissal is based on Rule 9(b). *Mathon v. Feldstein*, 303 F. Supp. 2d 317, 326 (E.D.N.Y. 2004) (citation omitted).

48.)  "Although Rule 8(d)(3) allows parties to plead alternative legal theories, it does not permit 'inconsistent *assertions of facts* within the allegations.'"  *XL Specialty Ins. Co. v. Otto Naumann, Ltd.*, No. 12-CV-8224 (DAB), 2015 WL 1499208, at *2 (S.D.N.Y. Mar. 31, 2015) (emphasis in original) (quoting *In re Livent, Inc. Noteholders Secs. Litig.*, 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001)).  Plaintiff here pleads that on the one hand Defendants looted/converted his stock interests, but on the other bases his claims -- for shareholder distributions, minority shareholder oppression, common law dissolution, statutory dissolution, and appointment of a receiver – upon his ownership as a shareholder of those *same* stock interests.

**B.  Breadth of Discovery and Burden of Responding to It; Risk of Unfair Prejudice**

Defendants argue that Plaintiff would not be prejudiced by a stay because he has already waited 35 years to assert his claims.  (DE 48 at 9.)  Plaintiff argues that he is already suffering prejudice because Defendants attach and rely, in part, upon purported agreements that Plaintiff has been requesting for years, yet at the same time, Defendants argue that discovery should be stayed.  (DE 53 at 2.)  The Court acknowledges and considers Plaintiff's claims of undue prejudice, however, concludes that a stay at this juncture – after Plaintiff waited over 30 years to commence this action – would not cause any further prejudice to Plaintiff.  By reason of Plaintiff's filing of this lawsuit, Defendants are, of course, under a legal duty to maintain and preserve existing evidence.  *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) ("[The] obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation – most commonly when suit has already been filed").

As for breadth of discovery and the burden of responding to it, while the likely volume of discovery in this case does not appear extraordinary, the Court does find that based on Defendants' argument as to the merits of Plaintiff's case, proceeding with discovery at this

juncture may indeed result in a waste of resources.  *See Rivera v. Heyman*, No. 96 Civ. 4489 (PKL), 1997 WL 86394, *1 (S.D.N.Y. Feb. 27, 1997) (finding that disposition of dismissal motion may significantly narrow or eliminate issues in case, and that proceeding with discovery would waste resources and cause an undue burden on defendants).

## IV.    CONCLUSION

Based upon the foregoing, the Court finds that good cause exists warranting a stay of discovery pending the outcome of the motion to dismiss.  Accordingly, Defendants' and Bileddo's motions to stay, are granted and discovery in this action is stayed pending resolution of Defendants' motions to dismiss.

Dated: Central Islip, New York
September 28, 2022

S O   O R D E R E D:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

21