UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ANTHONY CONTE,

                Plaintiff,

                                    **REPORT AND**
                                    **<u>RECOMMENDATION</u>**

         -against                           22-CV-3109 (DG) (JMW)

TAPPS SUPERMARKET, *et al.*,

                Defendants.

-------------------------------------------------------------------X

**A P P E A R A N C E S:**

Anthony Conte
6229 Heliconia Road
Delray Beach, FL 33484
***Pro se Plaintiff***

Michael P. Robotti, Esq.
Althea Daley, Esq.
John Chesley Burruss, Esq.
Marjorie J. Peerce, Esq.
**Ballard Spahr LLP**
1675 Broadway, 19th Fl.
New York, NY 10019
*Attorneys for Defendants Tapps Supermarket, Inc.,*
*Seven Seas Partners, Inc., Anthony C. Conte,*
*Paul S. Conte, and Pasquale Conte, Jr.*

Murray L. Skala, Esq.
Johnathan Honig, Esq.
**Feder Kaszovitz LLP**
845 Third Avenue, 11th Fl.
New York, NY 10022
*Attorneys for Defendants Tapps Supermarket, Inc., Anthony C.*
*Paul S. Conte, and Pasquale Conte, Jr., and the*
*Estate of Pasquale Conte, Sr.*

David J. Sack, Esq.
**Feder Kaszovitz LLP**
845 Third Avenue, 11th Fl.
New York, NY 10022
*Attorney for Defendants Tapps Supermarket, Inc.,*
*Seven Seas Partners, Inc., Anthony C. Conte,*
*Paul S. Conte, and Pasquale Conte, Jr., the*
*Estate of Pasquale Conte, Sr., and Feder Kaszovitz LLP*

Michael S. Cole, Esq.
**Cole Chester LLP**
777 Third Avenue, 25th Fl.
New York, NY 1001
*Attorney for Defendant Anthony Bileddo*

**WICKS**, Magistrate Judge:

Plaintiff Anthony Conte brings the instant suit against Tapps Supermarket, Inc., Anthony

C. Conte, Paul S. Conte, and Pasquale Conte, Jr., the Estate of Pasquale Conte, Sr., Anthony

Bileddo (collectively, "Tapps Defendants"), Seven Seas Partners, Inc. ("Seven Seas"), Feder

Kaszovitz LLP ("Firm"), (collectively, with  Tapps Defendants, "Defendants") for purportedly

stealing/depriving Plaintiff his ownership interests in corporate entities bequeathed to him by his

deceased parents.  (DE 19.)

Plaintiff asserts twelve claims as follows: (1) Violations of the Racketeer Influenced

Corrupt Organizations Act of 1970 ("RICO Claims"), 18 U.S.C. § 1962 (c) against Tapps

Defendants; (2) fraud against Defendants; (3) conversion against Tapps Defendants; (4)

"shareholder distributions" against Tapps Defendants; (5) "minority shareholder oppression"

against Tapps Defendants; (6) common-law dissolution against Seven Seas; (7) dissolution

pursuant to N.Y. Bus. Corp. L. § 1104-a against Seven Seas; (8) appointment of receiver

pursuant to N.Y. Bus. Corp. L § 1113 against Seven Seas; (9) unjust enrichment against Tapps

Defendants; (10) breach of fiduciary duty against Tapps Defendants and the Firm; (11) aiding

and abetting fraud against the Firm; and (12) negligent misrepresentation against the Firm.  (DE 19.)

Before the Court on referral from the Honorable Diane Gujarati are two motions to dismiss for failure to state a claim pursuant to Fed R. Civ. P. 12(b)(6) filed separately by Defendant Bileddo and the remaining Defendants.  (Electronic Order dated Dec. 21, 2021; DE 79; DE 85.)[1]  These motions raise many overlapping arguments, and thus, the Court addresses them together.  (*See* DE 79; DE 85-3.)  Plaintiff failed to file an opposition to Defendants' motions to dismiss.  (*See generally* Docket; *see also* DE 32 ("Plaintiff shall serve opposition papers on or before 10/28/2022."); DE 77 (letter dated Oct. 31, 2022 noting that Defendants have not received Plaintiff's opposition which was due Oct. 28, 2022); DE 83 at 4 (reply memorandum noting that "Plaintiff has failed to serve any opposition to the Motion to Dismiss"); DE 90 at 1-3 (letter by dated Dec. 12, 2022 noting that Plaintiff has defaulted in responding to Defendants' motions to dismiss).)  Notwithstanding the lack of opposition, since Plaintiff is pro se, the undersigned reviews the sufficiency of each of the claims.

For the reasons stated herein, it is respectfully recommended that Defendants' motions to dismiss (DE 79; DE 85) be granted and that Plaintiff's First Amended Complaint (DE 19) be dismissed with prejudice.

---

[1] Docket Entry 81 was also referred to the undersigned.  (Electronic Order dated Dec. 21, 2021.) However, that entry appears to be a duplicate of Docket Entry 85 that was filed in error and subsequently terminated.  (*See* Electronic Entry dated Dec. 5, 2021 ("Defendants' Motion 81 terminated, filed in error. Defendants' Motion to Dismiss was re-filed as document # 85.").)

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Factual Background

Given Plaintiff's *pro se* status, the following allegations are drawn not only from the First Amended Complaint, but from a review of other filings.[2]  These facts are assumed true on the instant motions.  Plaintiff alleges that Defendants acted in concert to deprive him of his stock and ownership rights.  (DE 19 at ¶ 2.)  Plaintiff's Antonino Conte owned shares of stock in the following corporations, several of which owned and operated supermarkets in Brooklyn and Queens, New York: (i) Conte Super-Markets, Inc., (ii) Conte Estate, Inc., (iii) Conte Flushing, Inc. (later known as Conte Family Circle, Inc.), (iv) Ancon Realty Corp., and (v) 3917-103rd Street Realty Corp.  (DE 19 at ¶ 25.)   Plaintiff's father Antonino Conte devised 1/6 of his estate to each of his children, to be delivered when they attained the age of 21.  (DE 19 at ¶ 23.)  Plaintiff attained the age of 21 in 1972.  (DE 19 at ¶ 25.)  Plaintiff began working full-time at the supermarkets in 1973 and was promoted to supervisor in 1980 following his graduation from law school.  (DE 19 at ¶ 26.)

Plaintiff alleges that, beginning on or about the late 1960s, he became aware of the Defendants' connection with organized crime.  (DE 19 at ¶ 29.)  Defendants Anthony C. Conte, Paul S. Conte, Pasquale Conte, Jr., and Anthony Biledeo were allegedly affiliated with the Gambino crime family, and frequently engaged in money laundering, drug distribution, and tax evasion.  (*Id.*)  Specifically, Plaintiff alleges that Defendants skimmed thousands of dollars each

---

[2] "[W]hen analyzing the sufficiency of a pro se pleading, a court may consider factual allegations contained in a pro se litigant's opposition papers and other court filings."  *Rodriguez v. Rodriguez*, No. 10-CV-891 (LGS), 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2013) (citations and internal quotation marks omitted).  Even though no opposition was filed, the Court has combed the docket for anything bearing relevance to the claims stated.

week from the supermarkets by physically removing money from bank deposits and cigarette vending machines before distributing it amongst themselves.  (DE 19 at ¶ 32.)  Defendants allegedly failed to report these profits to the IRS, manually altered cash register figures and receipts, and traveled to Italy to surreptitiously transport money abroad.  (DE 19 at ¶¶ 32, 41.)

Plaintiff further alleges that the Defendants made several misrepresentations -- for example, Defendants claimed they had cashed payroll checks for Plaintiff when no such checks existed.  (DE 19 at ¶ 33.)  Defendants also neglected to pay Social Security and Medicare taxes on Plaintiff's behalf.  (*Id.*)  Furthermore, Plaintiff alleges that Defendants "looted" the supermarkets to purchase more businesses of their own without granting Plaintiff an ownership interest in these new stores.  (DE 19 at ¶ 38.)

Plaintiff also makes general allegations of  gambling, loan sharking, drug distribution, money laundering, tax evasion, and murder.  (DE 19 at ¶¶ 29, 31, 39.)  Plaintiff makes several allegations pertaining to drug distribution, stating that he witnessed "strange men" smuggling bags and boxes into the supermarkets, and observed Defendants conducting clandestine meetings in a "bunker type" room, surrounded by "huge amounts of cash."  (DE 19 at ¶ 40.)  Further, Plaintiff asserts that he grew increasingly frightened by Defendants after learning of their alleged role in the death of a family friend.  (DE 19 at ¶ 36.)  Other incidents compounded his trepidation -- in 1976, a Defendant allegedly threatened to throw him off a roof.  (DE 19 at ¶ 37.)  In 1983, that same Defendant allegedly thrusted a submachine gun into his face and threatened his life.  (DE 19 at ¶ 42.)

In 1984, several individuals were arrested in connection with a Queens drug distribution conspiracy, and Plaintiff alleges that he recognized them as the "strange" couriers he had previously seen.  (DE 19 at ¶ 45.)  This realization, coupled with Plaintiff's desire to "distance

himself" from the alleged illicit activity, caused Plaintiff to sell his interests in two supermarket-owning corporations (Conte Super-Market, Inc. and Conte Estate Inc.) while "under duress," and the agreement allegedly undervalued the shares.  (DE 19 at ¶¶ 29, 46.)

Plaintiff is adamant, however, that he declined to be bought out of his ownership interests in (i) Conte Flushing, Inc. (later known as Conte Family Circle, Inc.), (ii) Ancon Realty Corp., and (iii) 3917-103rd Street Realty Corp, (collectively, "Disputed Companies").  (DE 19 at ¶ 28.) Since as far back as 1985, Plaintiff inquired repeatedly about his remaining ownership interests; however, these inquiries were allegedly rebuffed, ignored, or dismissed by Defendants on the basis that the remaining property was "worthless."  (DE 19 at ¶ 47.)  Plaintiff alleges that he inquired as to the status of Francesca Conte's shares of stock and was once again ignored.  (DE 19 at ¶ 48.)  Francesca Paola Conte, Plaintiff's mother, died intestate in 1990.  (DE 19 at ¶ 22.) Plaintiff alleges that he is entitled to her shares of stocks -- 1/3 of Antonino Conte's estate, "real, personal, or mixed."  (*Id.*)  Plaintiff was told neither him nor his mother had any shares of stock in the Disputed Companies that owned the subject properties.  (*Id.* at ¶¶ 47, 106, 108.)  Plaintiff further alleges that Defendants converted these shares for personal use.  (*Id.* at ¶ 22.)

Finally, Plaintiff alleges that the Defendants fraudulently merged the Disputed Companies into a new corporation, Seven Seas Partners, Inc., without consulting or compensating Plaintiff.  (DE 19 at ¶ 51.)  Specifically, Plaintiff asserts that the Firm "knowingly created . . . fraudulent transactions and mergers at the direction of the Tapps Defendants."  (*Id.*) Plaintiff was finally able to determine the status of his stocks in April 2022, when an online search revealed that Defendants had sold real property ("Subject Property") owned by one of the Disputed Companies -- Ancon Realty Corp. -- for the sum of $42.5 million dollars.  (DE 19 at ¶¶ 55.)  Plaintiff alleges that he was not acknowledged or compensated at all in connection with this

sale.  (DE 19 at ¶ 55.)  Plaintiff maintains that "it was only upon learning of this sale and through further investigation" that Plaintiff discovered he had an ownership interest in the Subject Property.  (DE 19 at ¶ 108.)  Plaintiff became aware that he should have received shares of the Disputed Companies both through his father's 1956 will and when his mother passed intestate in 1990.  (*Id*.)

Additionally, Plaintiff alleges the multiple instances of wire fraud and mail fraud committed by Defendants.  (DE 19 at ¶ 61.)  Plaintiff alleges that the Tapps Defendants, as recently as March of 2022, falsely and fraudulently represented on mortgage applications, permits and property sale documents, that they transmitted to third parties in interstate commerce and by wire, that they possessed clear title to the Subject Property, which they sold without clear title and ownership.  (*Id*. at ¶ 61.)  Plaintiff further notes that from 2017-2022 Anthony C. Conte, Paul S. Conte, Pasquale Conte, Jr. and Anthony Bileddo, submitted fraudulent IRS tax returns both personal returns, and those related to business entities.  (*Id*.)

## II.    Procedural Background

Plaintiff commenced this lawsuit on May 27, 2022.  (DE 1.)  On June 8, 2022, Defendant Bileddo filed a letter motion seeking a pre-motion conference in anticipation of filing a motion to dismiss.  (DE 6.)  On June 15, 2022, the remaining Defendants collectively filed their own letter motion seeking a pre-motion conference.  (DE 10; DE 12.)  On June 22, 2022, Plaintiff filed an opposition requesting that the Court "suspend" granting Defendants' request until "sufficient discovery and the production of the corporate books and records that are in dispute in this case can occur," to allow Plaintiff and the Court to determine the status of the corporate entities, real property, and other assets at issue.  (DE 18.)  On June 23, 2022, Judge Gujarati referred the letter motions to the undersigned.  (Electronic Order dated June 23, 2022.)

Plaintiff filed his First Amended Complaint on June 24, 2022.  (DE 19.)  On June 27, 2022, the undersigned granted the pre-motion conference requests.  (Electronic Order dated June 27, 2022; DE 6; DE 10.)  Defendants filed another letter motion updating the Court as to their position on their anticipated motions to dismiss in connection with the Amended Complaint, and Plaintiff filed a letter in response soon after.  (DE 22; DE 30.)  The parties then appeared before the undersigned for a pre-motion conference on July 14, 2022.  (DE 32.)  A briefing schedule was set for the Defendants' respective motions to dismiss, which as relevant here, required Plaintiff to serve his opposition on or before October 28, 2022.  (*Id*.)

Plaintiff made a motion to compel Defendants to produce corporate books and shareholder records, which was denied.  (Electronic Order dated July 19, 2022.)  On August 1, 2022, Plaintiff filed a letter threatening to move for recusal of the undersigned if the undersigned continued to let Defendants "hide" their corporate books and records and "deliberately waste [Plaintiff's] time and money."  (DE 46.)  The undersigned construed Plaintiff's letter as a motion for recusal and denied the motion.  (DE 92.)  Defendants filed their motions for a stay on August 5, 2022.  (DE 47; DE 48.) [3]  On September 28, 2022, the undersigned found that good cause warranted a stay of discovery pending the outcome of the motions to dismiss.  (DE 67.)

On September 22, 2022 Plaintiff filed a letter to Judge Gujarati requesting the undersigned recuse himself and for all proceedings to cease before the undersigned.  (DE 57.)  Plaintiff filed another similar letter on October 14, 2022.  (DE 72.)  Judge Gujarati considered and rejected Plaintiff's requests.  (Electronic Order dated Dec. 21, 2022.)  Judge Gujarati further found that a stay was indeed appropriate that it should remain in effect until the resolution of Defendants' motions to dismiss.  (*Id*.)

---

[3] A corrected Exhibit A to Defendants' motion (DE 48) was filed on August 11, 2022.  (DE 51.)

In the interim, Plaintiff had filed a motion to amend his complaint to incorporate new corporate documents procured by Defendants; however, the undersigned denied this motion without prejudice for a failure to comply with the undersigned's Individual Rule 3(A) and (C). (DE 69; Electronic Order dated Oct. 5, 2022.)  Subsequently, Plaintiff filed more letters, this time asserting that a stock redemption agreement put forth by Defendants was void under New York Corporate Business Law § 513(a).  (DE 71; DE 73.)  Plaintiff also sought a declaratory judgment and claimed that because the redemption was void, he is a shareholder of Seven Seas, Inc. through merger.  (DE 76.)

On December 5, 2022, Defendant Bileddo and the Tapps Defendants contemporaneously filed two separate motions to dismiss.  (DE 79; DE 85.)  Plaintiff's next letter was filed on December 13; in it, Plaintiff asserted his continued misunderstanding of the applicable rules and punctilios of court procedure that govern this litigation.  (DE 88; DE 89.)  Plaintiff asserted that that the Court must determine his shareholder status before allowing any motion to dismiss, expressed that the Court's refusal to issue a declaratory judgment had prejudiced him, and requested an attorney and a suspension of all proceedings until the first of the year (2022) to recover from his "recently" diagnosed pneumonia.  (DE 88; DE 89.)

On December 19, 2022, after Judge Gujarati denied Plaintiff's request that the undersigned be recused from this case, she referred the instant motions for a Report and Recommendation. (Electronic Order dated December 21, 2022.)  Finally, on January 3, 2023, Plaintiff filed a Notice of Interlocutory Appeal regarding the undersigned's decision on his motion for recusal.  (DE 95.)  That appeal was dismissed on June 20, 2023 on the ground that the district court had not issued a final order pursuant to 28 U.S.C. § 1291.  *See* Order, *Conte v. Tapps Supermarket, Inc.*, No. 23-16 (2d Cir. June 23, 2023).

Having reviewed the First Amended Complaint, Defendants' motions to dismiss, and Plaintiff's various filings, for the reasons stated herein, the undersigned respectfully recommends Defendants' motions to dismiss (DE 79; DE 85) be granted.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  When considering a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Ashcroft v. Iqbal*, 556 U.S. at 663.  Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  More is required.

The above standards apply to *pro se* complaints, such as the one here, as well, but in a less rigid manner.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotes and citations omitted).  When cases involve a *pro se* complaint like here, the Court must interpret the pleading

to raise the strongest claim suggested by the allegations.  *Rosen v. N. Shore Towers Apartments, Inc.*, No. 11-CV-00752 (RRM) (LB), 2011 WL 2550733, at *3 (E.D.N.Y. June 27, 2011).

"However, mere conclusions of law or unwarranted deductions need not be accepted." *Id.* (internal quotation marks omitted.)  Notably, "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,' and district courts 'cannot invent factual allegations' that the plaintiff has not pleaded." *Vidurek v. Pollen*, No. 20-CV-6714 (CS), 2021 WL 4066503, at *7 (S.D.N.Y. Sept. 7, 2021) (citing *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).

## DISCUSSION

I.    **Plaintiff's Request for Counsel And Failure to Oppose**

    A.    ***Plaintiff's Request for Counsel***

Plaintiff in passing requested appointment of counsel.  (DE 88; DE 89.)  Specifically, Plaintiff states he has been diagnosed, and is hospitalized, with pneumonia, which has left him "severely debilitated" and as a result has been advised to get bed rest.  (*Id.*)  Plaintiff then states: "As a result, I am respectfully requesting that the Court appoint an attorney for me in this case and that it suspend all proceedings in this case until after the first of the year to allow me to recover from this illness." (*Id.*)

First, Plaintiff's request for an attorney is now practically moot because the circumstances upon which Plaintiff premised his request appear to have passed: (a) Plaintiff's request was based on his pneumonia diagnosis and hospitalization, (b) Plaintiff asked for all proceedings to be stayed until the new year so he could recover, (c) it has now been more than six months past the date Plaintiff stated he needed to recover -- the new year, (d) Plaintiff has not provided any medical records or update regarding his purported illness, (e) Plaintiff has since

been fit enough to file an appeal, (f) and Plaintiff has not set forth any other explanation for why the appointment of a pro bono attorney would be appropriate.

Second, even if the request were not moot, the Court respectfully recommends it be denied.  Civil litigants do not have a constitutional right to counsel.  *See Hickman v. City of New York*, No. 20-CV-4603, 2020 WL 6565079, at *2 (S.D.N.Y. Nov. 9, 2020) (citing *United States v. Coven*, 662 F.2d 162, 176 (2d Cir. 1981)).  "The determination of whether appointment of counsel is necessary rests with the discretion of the court."  *In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984).  It is true that "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1).  But that is not what Plaintiff argues here.  Even if it were the basis proffered by Plaintiff, the court  "should first determine whether the indigent's position seems likely to be of substance."  *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986); *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989) ("The factor which command[s] the most attention . . . [is] the merits.").  "This means that it appears to the court from the face of the pleading that the claim(s) asserted by the plaintiff may have merit, or that the plaintiff 'appears to have some chance of success . . . .'"  *Hickman*, 2020 WL 6565079, at *2 (internal quotation marks omitted).

Having reviewed the First Amended Complaint and construed it liberally to raise the strongest possible arguments that may be discerned, the Court respectfully recommends denying Plaintiff's request for appointment of an attorney.  *See Phelan v. Sullivan*, 541 F. App'x 21, 25 (2d Cir. 2013) (summary order) (affirming trial court's denial where plaintiff "had not demonstrated that his claims were likely to succeed on the merits").

**B.**   *Plaintiff's Lack of Opposition*

Defendants' motions to dismiss are premised on Plaintiff's failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  As an initial matter, approximately eight months have elapsed since Plaintiff's opposition was due, and six months have gone since Plaintiff requested that all proceedings be halted until the new year given his health concerns. To date, Plaintiff has not filed an opposition to Defendants' motions to dismiss.  Notably, Plaintiff's December letter makes no mention of any health issues leading up to, or on October 28, 2023 when Plaintiff's opposition to Defendants' motions to dismiss was due.  (*See* DE 88; DE 89.)  Additionally, Plaintiff has not sought leave to file a late opposition, and thus, the Court assumes Plaintiff has no intention of filing one.

The December letter filed by Plaintiff after the fully briefed motions to dismiss were filed does not raise any material arguments and has no resemblance to a traditional opposition.  (*See* DE 88.)  In that letter, however, Plaintiff resists the motions and the Court reviews its contents in a liberal light to derive any arguments Plaintiff could be making that may materially relate to the instant motions.  Plaintiff makes a handful of scattered assertions.  First, Plaintiff states he has never seen the merger document proffered by Defendants purporting to show that Plaintiff sold his shares in one of the Disputed Companies, and that regardless, the agreement is unenforceable under New York law.  (DE 88 at 1.)  Given the dispute regarding the authenticity of this document, the Court does not consider it on the instant motions, rendering Plaintiff's arguments on this point moot.[4]

---

[4] The Court once again declines Defendants' invitation to consider the agreements of sale and general release (*see* DE 85-1 at 3 n.4) under which Plaintiff allegedly sold his ownership interests, any other extraneous documents or filings not attached to or incorporated by reference in the First Amended Complaint, and any document the authenticity of which is disputed.  *See Conte v. Tapps Supermarket, Inc.*, No. 22-CV-3109 (DG) (JMW), 2022 WL 4539267, at *4 (E.D.N.Y. Sept. 28, 2022) (declining to

Second, Plaintiff extrapolates, from his own conclusion that the merger document is void, that there can be no statute of limitations defense.  (DE 88 at 1.)  Defendants' statute of limitations defense exists separately from this merger document, and thus, this argument is purposeless.  Third, Plaintiff states that "before any motion to dismiss in this case is allowed based on a statute of limitations defense the court must determine the exact shareholder status of the Plaintiff."  (DE 88 at 1.)  The Court has no such obligation.  Insofar as this argument relates to Plaintiff's relentless quest to obtain corporate books and shareholder records, both the undersigned and Judge Gujarati have made clear that discovery is stayed, and thus, this argument is in vain.

What Plaintiff's December letter does accomplish, however, is that it strengthens the conclusion that Plaintiff was aware of Defendants' motions to dismiss.  Yet, failed to file any formal opposition.  Tapps Defendants suggest that given Plaintiff's unexplained default in formally opposing the motion to dismiss, "the motion should be granted on that basis alone." (DE 90 at 2.)  That is not so.  "In the context of a motion pursuant to Rule 12(b), the law of this Circuit is clear that a district court cannot grant the motion merely because it is unopposed. Instead, the court must assume the truth of the factual allegations and determine whether the motion is legally sufficient."  *Garcia v. Jackson Hurst Partners LLC*, No. 18-CV-3680 (LG), 2018 WL 4922913, at *3 (E.D.N.Y. Oct. 10, 2018) (collecting cases).  Although certainly not recommended practice, a plaintiff's failure to meaningfully oppose a motion to dismiss, as occurred here, is not necessarily fatal to the complaint, and does not warrant automatically granting a motion to dismiss.

---

consider these documents because, *inter alia*, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.").

Accordingly, the Court addresses the merits of each of Defendants' arguments in turn below.

## II.     Statute of Limitations And Tolling

### A.     *Plaintiff's Claims are Barred by the Statute of Limitations*

Defendants persuasively argue that the sun has long set on Plaintiff's claims since each is now barred by the applicable statute of limitations. The Court incorporates by reference the applicable statute of limitations period for each of Plaintiff's claims, as already extensively laid out in the Court's September 28, 2022 Decision and Order. *See Conte v. Tapps Supermarket, Inc.*, No. 22- CV-3109 (DG) (JMW), 2022 WL 4539267, at *5-6 (E.D.N.Y. Sept. 28, 2022) (outlining the statutes of limitations for each of Plaintiff's claims). In short, Plaintiff's claims are based on decades old conduct but are subject to limitation periods ranging between three and six years. *See id*. Plaintiff brought the instant suit on May 27, 2022. (DE 1.)

The limitations period on each of Plaintiff's claims begins to run as follows. First, for a RICO claim the limitations period starts to run when Plaintiff discovered, or he should have discovered his alleged injury rather than the pattern of racketeering activity itself. *Id*. Second, for unjust enrichment claims, the limitations period starts to run at the time when the Defendant has accepted the benefits that were bestowed upon him. *Id.* Third, Plaintiff's claims regarding minority shareholder oppression, shareholder distributions, common law dissolution, appointment of a receiver, and dissolution pursuant to BCL § 1104-a are based on allegations that Plaintiff's interests as a shareholder were wrongfully terminated, and the limitations period on these claims generally starts from the date the alleged wrongdoing occurred.[5] *Id*. Fourth, for breach of fiduciary duty claims, the limitation period starts to run at the time of breach. *Id*.

---

[5] Defendants highlight the factual inconsistencies that underly Plaintiff's claims. (DE 85-1 at 37.) Plaintiff pleads that "Defendants looted/converted his stock interests" while basing his corporate claims

Fifth, for conversion claims, the limitations period starts to run when the conversion occurs. *Id.*  Sixth, for negligent misrepresentation claims, the limitations period starts to run on the date of the alleged misrepresentation which is relied upon by the plaintiff. *See Von Hoffmann v. Prudential Ins. Co. of America*, 202 F. Supp. 2d 252, 263 (S.D.N.Y 2002).  Seventh, for fraud claims, the limitations period starts to run from "the time the plaintiff possesses knowledge of facts from which the fraud could have been discovered with reasonable diligence." *Papapietro v. Clott*, No. 22-CV-1318 (RPK) (VMS), 2023 WL 2185150, at *14 (E.D.N.Y. Jan. 30, 2023), *report and recommendation adopted*, 2023 WL 2731687 (E.D.N.Y. Mar. 31, 2023).

All of Plaintiff's claims are based on ownership interests that were allegedly terminated and stolen *decades* ago.  Plaintiff fails to allege any relevant act[6] that occurred within a three-to-six-year period preceding the filing of the complaint in May of 2022.  For example, Plaintiff states that starting in 1985 Plaintiff made repeated inquiries of Defendants and was told the Subject Property was worthless and neither him nor his mother had any shares of stock in Disputed Companies.  (DE 19 at ¶¶ 47, 106, 108.)  Plaintiff then alleges that the Defendants

---

"upon his ownership as a shareholder of those same stock interests." *Conte*, 2022 WL 4539267, at *9. Rule 8(d)(3) does "allow parties to plead alternative legal theories," however, that is much different than pleading "*inconsistent assertions of facts* within the allegations." *XL Specialty Ins. Co. v. Otto Naumann, Ltd.*, No. 12-CV-8224 (DAB), 2015 WL 1499208, at *2 (S.D.N.Y. Mar. 31, 2015) (internal quotation marks omitted).  However, there is authority for the proposition that a party may plead inconsistent allegations within *separate* claims as Plaintiff has done here. *Cf. Henry v. Daytop Vill.*, Inc., 42 F.3d 89, 95 (2d Cir. 1994) (noting that under Rule 8(e)(2) "a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency" and that "[t]he inconsistency may lie either in the statement of facts or in the legal theories adopted . . . ."); *In re McCann, Inc.*, 318 B.R. 276, 290 (Bankr. S.D.N.Y. 2004) ("In contrast to the alternative claims discussed above, the plaintiff's inconsistent allegations appear in the *same* claim, and are self-defeating.).  Nonetheless, in light of the undersigned's recommendations that Plaintiff's claims are barred by the applicable statute of limitations, and in the alternative, by the doctrine of judicial estoppel, what, if any, effect these inconsistencies have on Plaintiff's complaint on this motion is immaterial.

[6] Assuming for a moment that Plaintiff's allegations regarding wire, mail and tax fraud that occurred starting 2017-2022 support his RICO Claims, which they do not, Plaintiff's RICO claims based on those allegations would not be barred by the statute of limitations.  However, as discussed *infra* III.B, Plaintiff's RICO claims would otherwise fail due to a lack of standing and numerous other deficiencies.

fraudulently merged the Disputed Companies into a new corporation, Seven Seas Partners, Inc., without consulting or compensating Plaintiff.  (DE 19 at ¶ 51.)  Though Plaintiff alleges that the Subject Property was sold in 2022, based on his own allegations his ownership interests in the corporation that owned the property were allegedly stolen from him decades before along with his interest in the remaining Disputed Companies.  (DE 19 at ¶¶ 47-49.)  Plaintiff's claims are time-barred as the relevant wrongdoing that he complains of occurred a generation or two before he filed the instant complaint.

Accordingly, the undersigned respectfully recommends a finding that Plaintiff's claims are barred by the applicable statutes of limitations, and equitable tolling is not warranted.

**B.**     ***Equitable Tolling is Not Warranted***

The central question is whether equitable tolling is appropriate to allow Plaintiff to bring these claims at this late stage.  The Court finds that it is not.  Equitable tolling is only applied in "rare and exceptional circumstances," in which a party was prevented "from timely performing a required act," and that "party acted with reasonable diligence throughout the period" sought to be tolled.  *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (citation omitted).  "The doctrine of equitable estoppel applies where it would be unjust to allow a defendant to assert a statute of limitations defense . . . [such as when] a plaintiff is induced by fraud, misrepresentations or deception to refrain from filing a timely action."  *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014) (internal quotation marks and citations omitted).  In such an instance, the fraud, misrepresentations, or deception must be directed at preventing the plaintiff from filing a lawsuit and the plaintiff must show "reasonable reliance on defendant's misrepresentations, and due diligence in bringing a claim when the conduct relied upon as the basis for equitable estoppel ceases to be operational."  *Id*. at 442-43 (citation omitted).

Here, Plaintiff states that due to his repeated attempts to inquire about his ownership interests since 1985 he has been "ignored, rebuffed, stiff armed, and even threatened" by Tapps Defendants.  (DE 19 at ¶ 47.)  Plaintiff "began to believe that [Defendants] had somehow fraudulently merged the property-owning corporations that the Plaintiff and his mother had owned substantial shares in . . . ."  (DE 19 at ¶ 49.)  Alas, in April of 2022, Tapps Defendants sold the Subject Property for $42.5million dollars, and "it was only upon learning of this sale and through further investigation" that Plaintiff discovered he had ownership interests in the Disputed Companies by way of his father's 1956 will, and shares that should have been distributed to him after his mother passed intestate in 1990.  (DE 19 at ¶ 108.)

 "[T]he issue is not whether plaintiff was in possession of all of the information necessary to prevail on his claims, but whether plaintiff had enough information to commence a lawsuit." *Statler v. Dell, Inc.*, 841 F. Supp. 2d 642, 647 (E.D.N.Y. 2012).  Even if Plaintiff did not think he had enough evidence to prove his case decades earlier, it is clear from his allegations that he believed he owned interests in the Disputed Companies that were, *inter alia*, wrongfully terminated, and his efforts to obtain more information had been suspiciously blocked for decades.  *See Torre v. Columbia Univ.*, 1998 WL 386438, at *8 (S.D.N.Y. July 10, 1998) ("[E]quitable tolling is intended to provide relief where a plaintiff is not aware of the existence of a cause of action, not where a plaintiff is aware of the cause of action but believes that she may not have sufficient evidence to prove her case"), *aff'd*, 189 F.3d 462 (2d Cir. 1999).

Plaintiff was not diligent in pursuing his claims.  Plaintiff's allegations, when taken at face value, essentially state that he saw one of the properties, which he believed for over three decades that he had an interest in, was sold for an attractive seven figure sum, and *then* he diligently investigated and uncovered information regarding his ownership interests through his

father's 1956 will, and mother's 1990 intestate passing, that appears to have been available for decades prior. *See Conte*, 2022 WL 4539267, at *6 ("And so, not until the subject property was sold did Plaintiff decide to bring the instant lawsuit, which casts significant doubt as to due diligence in bringing the claims."). Regardless of whether Defendants committed wrongful acts that would otherwise suffice to invoke tolling, "the statute of limitations will nonetheless" begin to run because of Plaintiff's failure to acquire the necessary knowledge "through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice." *Statler*, 841 F. Supp. 2d at 647.

Additionally, as Defendants point out, Plaintiff alleges that Defendants committed fraud by not allowing Plaintiff's ownership interest to be included in certain "merger documents." (DE 19 at ¶ 163.) However, the "Entity Information" documents for two of the Disputed Companies listed on the New York Department of State website reflect that they were merged out of existence as of 1986. (*See* DE 85-5.) These documents are public filings that can be considered on this motion. *See Norton v. Town of Islip*, 97 F. Supp. 3d 241, 253 (E.D.N.Y. 2015) ("The Court may also take judicial notice of public documents in deciding a motion to dismiss."). Their existence further supports Plaintiff's lack of diligence. *See In re Polaroid Corp. Sec. Litig.*, 465 F. Supp. 2d 232, 243 (S.D.N.Y. 2006) ("[P]laintiffs were on notice of that fraud as soon as the relevant statements were published because that evidence was publicly available . . . ."). Given Plaintiff's lack of diligence while on notice of sufficient facts for him to reasonably investigate and pursue his claims, equitable tolling is not warranted here.

Accordingly, the undersigned respectfully recommends a finding that equitable tolling is not warranted.

### III.    Alternate Grounds for Dismissal

In the event Judge Gujarati disagrees with the undersigned's foregoing recommendations that the applicable statutes of limitations bar Plaintiff's claims, and equitable tolling does not apply, the undersigned addresses Defendants' alternative arguments below.

### A.    *Judicial Estoppel*

Defendants aver that Plaintiff's failure to list his alleged interests in the subject companies as part of his 2003 and 2004 bankruptcy filings warrants the application of judicial estoppel.  (DE 85-1 at 17.)  Judicial estoppel may be invoked by a party if  "(1) his adversary 'advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner.'"  *See Romeo v. FMA All., Ltd.*, No. 15-CV-6524 (ADS) (ARL), 2016 WL 3647868, at *13 (E.D.N.Y. June 30, 2016) (quoting *Wight v. BankAmerica Corp.*, 219 F.3d 79, 89 (2d Cir. 2000)).

A debtor seeking bankruptcy protection is required to disclose all assets.  *See Thomas v. JP Morgan Chase, N.A.*, No. 11-CV-3656 (JG)(RML), 2012 WL 2872164, at *7 (E.D.N.Y. July 11, 2012).  Courts commonly "invoke judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim in a subsequent action."  *Id.* (citations omitted).  Defendants point out that Plaintiff failed to list his alleged interests in the subject companies in the schedule of assets contained within his 2003 and 2004 bankruptcy petitions. (*See* DE 85-4.)  Plaintiff's claims are all "based upon his purported ownership interests."  *Conte*, 2022 WL 4539267, at *5.  Plaintiff has previously argued in opposition to Defendants' pre-motion conference request and motion to stay, that he had no idea what property he had an ownership interest in, relied detrimentally on Defendants' fraudulent statements, and only become aware after the sale of the property in 2022.  *See id* at *4.

As the Court previously noted: "Before and after Plaintiff's bankruptcy case, he claimed ownership interest in the subject properties, as asserted in the Amended Complaint and argued in his briefs. The inconsistency is irreconcilable on this record." *Id.*  Plaintiff has failed to offer a sensible reason to explain away that clear inconsistency.  Further, the requirement that the prior inconsistent statement be adopted in a prior proceeding is fulfilled since Plaintiff's "Chapter 13 plan was confirmed based on the representations in his 2004 petition,"  (DE 85-1 at 18).  *See Negron v. Weiss*, No. 06-CV-1288 (CBA), 2006 WL 2792769, at *3 (E.D.N.Y. Sept. 27, 2006) (finding the second requirement is "usually fulfilled when the bankruptcy court confirms a plan pursuant to which creditors release their claims against the debtor").

 "In the bankruptcy context, the rationale for these [estoppel] decisions is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets." *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 58 (S.D.N.Y. 1999) (internal quotation marks omitted).  "Specifically, courts have recognized that [i]t would violate the integrity of the bankruptcy system to permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently' assert those claims for his own benefit in a separate proceeding." *Romeo*, 2016 WL 3647868, at *13.  Thus, judicial estoppel is appropriate to stop Plaintiff "from asserting claims for [his] own benefit in this proceeding, which claims [he] previously concealed in order to obtain relief from the bankruptcy court," and to protect the integrity of the bankruptcy courts. *See id.* at *15.

Accordingly, the undersigned respectfully recommends granting Defendants' motions to dismiss based on the doctrine of judicial estoppel.

21

**B.**     *Plaintiff Fails to Plead RICO Claims*

Defendants argue that even if Plaintiff's RICO claims were timely, they nonetheless fail. Defendants argue that Plaintiff has not pled the elements of his three-fold civil RICO claims, 18 U.S.C. § 1962(c) (Count 1), 18 U.S.C. § 1962(a) (Count 2), and 18 U.S.C. § 1962(d) (Count 3). (DE 19 at ¶¶ 60–103.)  There are three general elements to a civil RICO claim: "(1) a violation of 18 U.S.C. § 1962; (2) injury to plaintiff's business or property; and (3) causation of the injury by the violation."  *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 222 (E.D.N.Y. 2014).

To state a violation under section 1962(a), a plaintiff has to plead "(1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce."  *Hinterberger v. Catholic Health Sys., Inc.*, 536 Fed. Appx. 14, 16 (2d Cir. 2013) (internal quotation marks and citation omitted).  To state a violation under section 1962(c), a plaintiff has to plead "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity." *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999).

**i.**     **The Defendants' Activities**

As relevant to his RICO claims, Plaintiff alleges that Tapps Defendants created an "enterprise," which he describes as the Tapps Enterprise, "for the common purpose of intentionally and willfully defrauding the Plaintiff . . .  and others including the Plaintiff's mother Francesca Paola Conte by creating and concocting a fraudulent scheme to loot and convert to their own use, without payment . . ." their stock shares in various property-owning corporations. (DE 19 at ¶¶ 71-72.)   Plaintiff alleges multiple instances of wire fraud and mail fraud committed

by Defendants.  (DE 19 at ¶ 61.)  Plaintiff further alleges that Tapps Defendants, as recently as March of 2022, falsely and fraudulently represented in mortgage applications, permits and property sale documents that they transmitted to third parties in interstate commerce and by wire, that they possessed clear title to the Subject Property, which they sold for $42.5 million when they did not in fact have clear title and ownership of  it.  (*Id*.)  Plaintiff notes that from 2017-2022 Anthony C. Conte, Paul S. Conte, Pasquale Conte, Jr. and Anthony Bileddo, submitted fraudulent IRS tax returns in both personal and business capacities.  (*Id*. at ¶ 62.)

Plaintiff separately makes general allegations of  gambling, loan sharking, drug distribution, money laundering, tax evasion, and murder.  (DE 19 at ¶¶ 29, 31, 39.)  There are some specifics, for example, that Anthony C. Conte and his father helped plan and commit the murder of a "Carlo Arena."  (DE 19 at ¶¶ 35-36.)  On one occasion, Plaintiff saw Defendants counting bags of cash that Plaintiff, for some unspecified reason somehow knew, were not from profits from the supermarket businesses.  (DE 19 at ¶ 40.)  Plaintiff on another occasion "noticed small bags of what appeared to be drugs" delivered to one store.  (DE 19 at ¶ 41.)  Defendants were stealing money from the supermarket business in which Plaintiff owned shares because they distributed profits amongst themselves and failed to report accurate amounts to the IRS to avoid paying taxes.  (DE 19 at ¶¶ 32-33.)

Plaintiff speaks of fraudulent transactions and mergers conducted with the primary purpose of depriving Plaintiff and his mother of their ownership interests in the Disputed Companies, and Defendants' unwillingness to show him the corporate books and records of the Disputed Companies.  (DE 19 at ¶¶ 47-53.)  Plaintiff laments that after the 2022 sale of the Subject Property in which Plaintiff had an ownership interest in,  Plaintiff received zilch.  (DE 19

¶ 52.)  Plaintiff describes this as a "fraudulent concealment and scheme" that resulted in

Defendants enriching themselves at Plaintiffs' expense.  (DE 19 at ¶ 53.)

      ii.      **The Shortcomings of Plaintiff's RICO Claims**

A myriad of issues pervade Plaintiff's allegations.  Notably, the following issues render

Plaintiff's RICO claims deficient.  First, Plaintiff lacks standing to pursue his claims.  To bring

RICO claims under section 1962, plaintiff must establish that the RICO violation was "the

proximate cause of his injury," which requires some "direct relation between the injury asserted

and the injurious conduct alleged"  *Nygard v. Bacon*, No. 19-CV-1559 (LGS)(KNF), 2021 WL

4312581, at *10 (S.D.N.Y. Mar. 31, 2021) (internal quotations omitted), *report and*

*recommendation adopted*, 2021 WL 3721347 (S.D.N.Y. Aug. 20, 2021); *see also Stolow v. Greg*

*Manning Auctions Inc.*, 258 F. Supp. 2d 236, 245 (S.D.N.Y.) ("[T]o have standing to bring a

claim for civil damages under section 1962(a), a plaintiff must allege injury from defendants'

investment of racketeering income in an enterprise." (internal quotation marks omitted)), *aff'd*,

80 F. App'x 722 (2d Cir. 2003) (summary order).

Specifically, Plaintiff lacks standing to pursue RICO claims based on the predicate acts of

gambling, money laundering, loan sharking, murder, and other similar criminal activity.  None of

these acts, though to be frowned upon, directly harmed Plaintiff and they have little to anything

to do with Plaintiff's claimed injuries.  Bileddo correctly notes these alleged predicate acts can

hardly be characterized as the but for cause of Plaintiff's alleged injuries which concern losing

his ownership interests (DE 79 at 1).  *Alix v. McKinsey & Co.*, 23 F.4th 196, 203 (2d Cir.)

(noting that the RICO violation must be the but-for cause of plaintiff's injury, "meaning that but

for the RICO violation, he would not have been injured."), *cert. denied*, 214 L. Ed. 2d 132, 143

S. Ct. 302 (2022).

Perhaps it can be argued that Plaintiff's suffered injury based on his looted ownership interests in the Disputed Companies because some of the properties those companies owned served as the homebase for some of these activities, which resulted in lost or stolen profits. However, "[a] shareholder generally does not have standing to bring an individual action under RICO to redress injuries to the corporation in which he owns stock." *Manson v. Stacescu*, 11 F.3d 1127, 1131 (2d Cir. 1993). "Since the shareholder's injury, like that of the creditor, generally is derivative of the injury to the corporation, the shareholder's injury is not related directly to the defendant's injurious conduct." *Id*. Therefore, Plaintiff lacks standing to pursue RICO claims based on these predicate acts.

Moreover, Plaintiff lacks standing to bring RICO claims based on the predicate acts of wire fraud, mail fraud, and tax fraud.  (DE 19 at ¶¶ 61-68.)  As an initial matter, Defendants act of selling the Subject Property without clear title and defrauding the IRS is not an injury to Plaintiff.  Further, Plaintiff's alleged loss of a portion of the profits from the sale is not an injury that is "the target of the racketeering enterprise nor the competitors nor the customers of the racketeer." *In re Am. Exp. Co. Shareholder Litig*., 39 F.3d 395, 399 (2d Cir. 1994) (citations omitted).  Notably, however, Plaintiff alleges to have had his ownership interest in the Disputed Companies already looted decades prior.  Defendants subsequently engaged in transactions and mergers that wiped out Plaintiff's interests.  Therefore, whatever injury, if any, resulted from the sale of Subject Property in 2022, had little to do with Plaintiff.

Second, the "continuity" requirement demands that a plaintiff to plead at least two predicate acts, and show that those acts are related and amount to, or pose a threat of, continuing criminal activity. *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 465 (2d Cir. 1995) (citing § 1961(5)).  "A pattern of racketeering may be closed-ended or open-ended." *Rosner v.*

*Rosner*, 766 F. Supp. 2d 422, 425 (E.D.N.Y. 2011).  While a close-ended pattern has a discrete

beginning and end, and open-ended pattern does not necessarily have a broad set of predicate

acts, but consists of a pattern likely to continue into the future.  *Id.*  There is also a relatedness

requirement whereby predicate crimes must be related to each other and to the enterprise as a

whole.  *Reich v. Lopez*, 858 F.3d 55, 60-61 (2d Cir. 2017) (citations omitted).

Even putting blinders on to ignore the standing issues, Plaintiff's scattershot allegations

of varying types of seemingly disconnected illegal conduct are coupled with the driving assertion

that Defendants were engaged in a single goal -- a fraudulent scheme to defraud him of his

ownership interests.  (DE 19 at ¶¶ 53, 71-72.)  Under the circumstances, that singular scheme

does not establish the required continuity for his RICO claims.  *See Rosner*, 766 F. Supp. 2d 422,

425-26 (finding that regardless of the alleged predicate acts, the plaintiff alleged a single goal of

all of the activity, which does not rise to the level of wrongdoing required to state a RICO

claim); *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 468 (2d Cir. 1995) ("Plaintiff

provides no other basis for concluding that the defendants' acts satisfy the continuity

requirement. The activities alleged involved only a handful of participants."); *Grace Int'l

Assembly of God v. Festa*, 797 F. App'x 603, 606 (2d Cir. 2019) (summary order) ("While Grace

attempts to magnify the racketeering scheme by expanding the number of victims and predicate

acts, in reality this is one scheme with one clear victim. That is clearly insufficient to establish a

pattern for the purposes of RICO.").

Additionally, the stark dissimilarity between the alleged victims -- Plaintiff and the IRS --

runs afoul of the relatedness requirement.  *See Reich v. Lopez*, 858 F.3d 55, 60-61 (2d Cir. 2017)

(finding that dissimilar "methods of commission, victims, and result of the predicate acts . . .

weigh against relatedness.").  ,

Third, Plaintiff's allegations of wire fraud, mail fraud, tax fraud (*see, e.g.*, DE 19 at ¶¶ 61-68) are not pled with particularity in accordance with Rule 9(b).  *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004) ("[A]ll allegations of fraudulent predicate acts[ ] are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).").  Rule 9(b) "requires the plaintiff '(1) to specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 197 (2d Cir. 2013) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)) (additional citations omitted). "Conclusory statements and allegations are not enough to meet the Rule 9(b) pleading requirements." *Beth Israel Med. Ctr. v. Verizon Bus. Network Servs.*, No. 11-CV-4509 (RJS), 2013 WL 1385210, at *4 (S.D.N.Y. Mar. 18, 2013) (internal quotation marks omitted).

Plaintiff makes conclusory assertions, for example, that (i) Defendants made false representations in mortgage applications, permits, and property sale documents by mail and wire that they had clear title to the Subject Property, and (ii) from 2017-2022 Defendants filed fraudulent tax returns both personally and for unknown business entities through wire and mail in which they made false representations regarding profits earned and/or deductions and losses. (DE 19 at ¶ 61, 62.)   Plaintiff fails to explain why Defendants did not have clear title of the Subject Property.  Plaintiff also fails to provide any detail as to the dates the relevant filings were made, and who specifically made them.  Plaintiff further fails to differentiate between the specific Defendants actions, instead coupling all Defendants together and asserting that each committed the acts in question.  Plaintiff additionally fails to explain which Defendants filed fraudulent taxes for which specific business.  And, no detail whatsoever is alleged as to each

27

Defendant's knowledge, and thus, fraudulent intent, regarding the profits, losses, or deductions made.

Finally, to state a violation of under section 1962(d), a plaintiff has to plead that defendants conspired to violate any of the other subsections of section 1962.  *Sky Med. Supply Inc.,* 17 F. Supp. 3d at 230.  However, the "failure to plead a substantive RICO violation is [ ] fatal to plaintiff's RICO conspiracy claim under § 1962(d)."  *Tooker v. Guerrera*, No. 15-CV-2430(JS)(ARL), 2016 WL 4367956, at *11 (E.D.N.Y. Aug. 15, 2016); *see also Nat'l Group for Comm'ns. and Computers Ltd. v. Lucent Tech., Inc.*, 420 F.Supp.2d 253, 272 (S.D.N.Y.2006) ("Case law in this Circuit confirms that a 1962(d) conspiracy claim must be dismissed where the substantive RICO claim is deficient.").

Accordingly, the undersigned respectfully recommends that Defendants' motions to dismiss be granted as to Plaintiff's RICO claims.

### C.      *Plaintiff Fails to Plead Conversion*

Defendants argue that Plaintiff fails to properly plead conversion since the allegedly converted property at issue is intangible.  (DE 79 at 10.)  Under New York law conversion is "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights."  *Ancile Inv. Co. v. Archer Daniels Midland Co.*, 784 F. Supp. 2d 296, 312 (S.D.N.Y. 2011).  To state a claim for conversion, "a plaintiff must show: (1) legal ownership or an immediate superior right of possession to a specific identifiable thing and (2) that the defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights."  *Id*.

Plaintiff alleges that Defendants stole his "stock and real property" that Plaintiff owned through "corporations he owned shares of stock in."  (DE 19 at ¶ 116.)  Plaintiff later alleges that

28

one of the companies in which his stock was converted, had a property that was sold for millions. (DE 19 at ¶¶ 118-19.)  Despite the way Plaintiff frames his allegations, all Plaintiff is asserting is that he owned stock in certain companies -- the Disputed Companies --, and that stock was converted when it was stolen from him.

"Generally, only tangible property can be the subject of a conversion action, but intangible rights can form the basis of conversion damages when the converted property is a document into which intangible rights have merged."  *Id*.  The simplest evidence of stock ownership sufficient to bring a claim for conversion is a stock certificate.  *See Phansalkar v. Andersen Weinroth & Co., L.P.*, 175 F. Supp. 2d 635, 640 (S.D.N.Y. 2001) ("New York recognizes that stock certificates and bonds are documents which embod [y] an intangible right" (internal quotation marks omitted)).  However, that is not the only avenue available.  "Case law also reveals that, in New York, a claim for conversion of shares of stock may lie even if plaintiff does not have a stock certificate evidencing those shares."  *Id*. at 641 (collecting New York state cases).

Take for example, *Phansalkar*, where the court found that a memo reflecting the prior sale of certain shares to Plaintiff sufficiently identified plaintiff's intangible interest in the company and "establishe[d] [plaintiff's] possession of specifically identifiable property that may be the subject of a conversion claim."  *Id*. (internal quotation marks omitted).  Similarly, here, though Plaintiff does not allege to have stock certificates identifying his shares in the Disputed Companies, that fact is not fatal to his conversion claim.  Attached to Plaintiff's First Amended Complaint are two documents, one of which sufficiently identifies and embodies his alleged intangible ownership interests.  (DE 19 at 47, 52.)  Plaintiff's father's 1956 will states that the

29

balance of his "estate, real, personal, or, mixed" is to be devised and bequeathed to his three sons including Plaintiff through a trust fund until they reach the age of twenty one.  (DE 19 at 48-49.)

At the pleading stage, assuming Plaintiff's father owned the Disputed Companies as Plaintiff alleges, the express terms of the will support Plaintiff's right to ownership interests in the Disputed Companies.  Those rights would have been converted when Defendants repeatedly excluded Plaintiff from accessing them.  Thus, contrary to Defendants' assertions, if Plaintiff's conversion claim were not barred by the applicable statute of limitations, that fact that Plaintiff's conversion claim is premised on intangible interests would not preclude him from asserting it.

## D.    *Plaintiff Fails to Plead Fraud*

Defendants assert that Plaintiff's fraud claim (DE 19 at ¶¶ 104-113) is not plead with particularity and does not plausibly allege justifiable reliance.  (DE 85-1 at 24-25.)  The Court agrees.  First, as discussed above, Rule 9(b) "requires the plaintiff '(1) to specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *Nakahata*, 723 F.3d at 197.

Apart from alleging that Defendants informed him time and time again that certain properties were "worthless" and that neither Plaintiff nor his mother owned any interests in the Disputed Companies, Plaintiff fails to allege any actual fraud,  (DE 19 ¶¶ 47, 106).  *See Conte*, 2022 WL 4539267, at *8. ("Here, while Plaintiff's Amended Complaint details specific places, times, and conversations he had with multiple Defendants regarding their alleged criminal dealings with murders and mob activities, there is a lack of detail regarding his actual claims of fraud.").  The Court has previously noted that "even considering Plaintiff's *pro se* status, the

30

Court finds Defendants' arguments that the fraud claims are not adequately pled to be persuasive." *Id.* That conclusion remains unchanged.

Second, under New York law "reasonable reliance on the part of the plaintiff" is an element of a fraud claim. *See Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006). "Where the representation relates to matters that are not peculiarly within the other party's knowledge and both parties have available the means of ascertaining the truth, New York courts have held that the complaining party should have discovered the facts and that any reliance under such circumstances therefore would be unjustifiable." *Royal Am. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1016 (2d Cir. 1989).

Plaintiff claims to have "relied on [Defendants'] material misrepresentations . . . at the time and going forward." (DE 19 at ¶ 107.) As a result of that reliance, Plaintiff "suffered a significant financial loss" when one of the properties he was told was worthless and was sold for millions, and Plaintiff subsequently learned he had an ownership interest in it by virtue of his ownership interest in the Disputed Companies. (DE 19 at ¶¶ 108-109.) However, Plaintiff also alleges that he repeatedly demanded to know the status of the "stock and property he owned" and "to inspect the books and records of the corporations he had an ownership interest in that they controlled." (*See, e.g.*, DE 19 at ¶¶ 121.) Further, Plaintiff claims that back in 1984 after selling his interests in other companies, he intended to "maintain his ownership in" and "declined to be bought out of" his interests in the Disputed Companies. (DE 19 at ¶ 28. Accepting Plaintiff's allegations as true, still leaves the following question: Did Plaintiff rely on Defendants' alleged misrepresentations if he did not believe Defendants statements, was already aware of his ownership interests, and continued to make repeated inquiries?

Moreover, Plaintiff implies that given Defendants' repeated misrepresentations that he could not have learned of his "substantial interest" in the Subject Property or in the Disputed Companies any sooner.  (DE 19 at ¶¶ 108-109.)  But Plaintiff fails to explain how learning about the sale of the Subject Property suddenly led to his fortuitous discovery that he owned interests in the Disputed Companies.  (DE 19 at ¶ 108.)  Plaintiff merely states that he learned this information "through further investigation."  (DE 19 at ¶ 109.)  Perhaps then, Plaintiff had the means to learn of it earlier, qui sait?  *Cf.  Compania Sud-Americana de Vapores v. IBJ Schroder Bank Trust Co.*, 785 F. Supp. 411, 419 (S.D.N.Y. 1992) ("In this case, there is no basis to dispute that [plaintiff] had access to the critical information underlying its fraud claim and, had it exercised ordinary intelligence or made simple inquiries, [it] would have been able to discover the alleged misrepresentations.").  In any event, Plaintiff fails to plausibly allege that he justifiably relied on Defendants' misrepresentations regarding his ownership interests.

Accordingly, the undersigned respectfully recommends granting Defendants' motions to dismiss on the fraud claim

### E.      *Plaintiff Fails to Plead Claims Against Defendant Feder Kaszovitz LLP*

Defendants argue that Plaintiff's claims of  breach of fiduciary duty, fraud, aiding and abetting fraud, and negligent misrepresentation against the Firm all fail.  (DE 85-1 at 39-40.)  The fraud claim has already been addressed as to all Defendants, and thus, that reasoning applies with equal force as to claims against the Firm.  Plaintiff's claims are especially feeble as to the Firm given that Plaintiff fails to plead any fraudulent statement or negligent misrepresentation specifically made by the Firm that Plaintiff relied on.

Plaintiff's failure to adequately plead a fraud claim is also incidentally fatal to his aiding and abetting fraud claim.  *See Frederick v. Wells Fargo Home Mortg.*, No. 13-CV-7364

32

(DLI)(LB), 2015 WL 1506394, at *12 (E.D.N.Y. Mar. 30, 2015) ("Here, because Plaintiffs have

not properly alleged the existence of the underlying fraud, Plaintiffs' claim for aiding and

abetting must be dismissed."), *aff'd*, 649 F. App'x 29 (2d Cir. 2016) (summary order).  Moreover,

the demise of Plaintiff's fraud claim for a lack of justifiable reliance knocks the wind out of his

negligent misrepresentation claim with equal force.  *See Hydro Investors, Inc. v. Trafalgar*

*Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000) (noting that a required element of negligent

misrepresentation is that "the plaintiff reasonably relied on [the false representation] to his or her

detriment").

Plaintiff's claim for a breach of fiduciary duty also fails as a matter of law.  Under New

York law, a law firm does not automatically owe a fiduciary duty to its client's shareholders.

*See Ahmed v. Trupin*, 809 F.Supp. 1100, 1106 (S.D.N.Y.1993) (finding plaintiffs' negligence fail

because "[a] lawyer employed or retained by a corporation or similar entity owes his allegiance

to that entity, not to every person connected with that entity.").   Indeed, "[a] lawyer's

representation of a business entity does not render the law firm counsel to an individual partner,

officer, director or shareholder unless the law firm assumed an affirmative duty to represent that

individual.'" *Protostorm, LLC v. Antonelli, Terry, Stout & Kraus, LLP*, 834 F. Supp. 2d 141, 154

(E.D.N.Y. 2011).

Plaintiff asserts that despite the Firm's "fiduciary obligations and relationship" to

Plaintiff as a shareholder of the Disputed Companies, the Firm's wrongful and fraudulent acts

violated its duties.  (DE 19 at ¶¶ 154-161.)  Plaintiff alleges that the Firm was aware that Plaintiff

had substantial ownership interests in the Disputed Companies, and yet the Firm did not

affirmatively contact Plaintiff to verify his ownership interests before assisting Defendants.  (DE

19 at ¶ 164.)  Plaintiff notes that the Firm, *inter alia*, prepared fraudulent merger documents that resulted in harm to Plaintiff.  (DE 19 at ¶ 165.)

Absent from Plaintiff's First Amended Complaint, however, are facts that indicate privity between Plaintiff and the Firm, or any meaningful interaction or connection between the two, other than Plaintiff's shareholder status.  Thus, Plaintiff's breach of fiduciary duty claim against the Firm succumbs to that deficiency.  *See Sanders v. Bressler, Amery & Ross, P.C.*, No. 03-CV-5283 (DRH) (WDW), 2006 WL 319303, at *6 (E.D.N.Y. Feb. 10, 2006) (dismissing malpractice and negligent misrepresentation claims where there was no privity or conduct closely linking the firm and plaintiffs).

Accordingly, the undersigned respectfully recommends Defendants' motion to dismiss with respect to Plaintiff's claims against the Firm be granted.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Defendants' motions to dismiss be granted and Plaintiff's First Amended Complaint (DE 19) be dismissed with prejudice. [7]

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on Defendant's counsel.  Defendant is directed to serve a copy of this Report and Recommendation upon *pro se* Plaintiff and file proof of service <u>within two business days</u> of the date of this Report and

---

[7] Given Plaintiff's *pro se* status, the Court would ordinarily recommend providing Plaintiff with yet another opportunity to amend his complaint to cure any pleading deficiencies.  However, under the circumstances, there is not plausible set of facts that could cure the fatal deficiencies here, since the claims are all barred by the statute of limitations, or in the alternative, the doctrine of judicial estoppel. Accordingly, any further amendment would likely be futile.  *See Chung v. City Univ. of New York* , 605 Fed.Appx. 20, 21 (2d Cir. 2015) (summary order) ("An amendment is futile if the proposed pleading would not survive a Rule 12(b)(6) motion to dismiss.").

Recommendation.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report.  28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (summary order) (same).

Dated:  Central Islip, New York
        July 3, 2023

RESPECTFULLY RECOMMENDED,

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge